IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN DECHELLO | * | |
| Appellant, | * | |
| v. | * | Civil Action No.: RDB-09-1793 |
| | | Bankruptcy No.: 08-16965 |
| RONNIE LYNNE CARMAN, | * | Adversary No.: 08-00635 |
| Appellee. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## AMENDED MEMORANDUM OPINION

This case is before this Court on appeal from the Order of the United States Bankruptcy Court granting the Appellee-Debtor Ronnie Lynne Carman ("Carman") a discharge in bankruptcy and denying judgment for the Appellant-Creditor Steven DeChello ("DeChello"). At a hearing on June 4, 2009, the Bankruptcy Court found that Carman was entitled to a discharge pursuant to the Bankruptcy Code, 11 U.S.C. §727. The court found that DeChello had not proven that the debt was induced by fraud or deceptive trade practices and had therefore not proven that the debt was non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Specifically, the court found that the evidence was insufficient to find that Carman had knowingly and willfully misrepresented material facts when he accepted installment payments from DeChello to build a boat. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a) as DeChello's appeal arises from the final order entered by the United States Bankruptcy Court for the District of Maryland and is brought pursuant to Local Rule 404(1)(a) (D. Md. 2008) and Rules 8001 *et seq.* of the Federal Rules of Bankruptcy Procedure. The parties have fully briefed the issues and oral argument was presented to this Court on November 2, 2009. For the reasons stated below, the Order of United States Bankruptcy Court is REVERSED and this case is

1

REMANDED to the Bankruptcy Court for further fact finding as to whether the entirety of Carman's debt is dischargeable.

## BACKGROUND

Appellant-Creditor Steven DeChello alleges that Appellee-Debtor Ronnie Carman failed to construct and deliver a boat in accordance with the terms of a written contract. DeChello maintains that Carman induced him to continue making installment payments by making material misrepresentations and omitting material facts.

On July 14, 2006, DeChello contracted with Carman Boats, Inc., an entity solely owned by Carman, to construct a 32' boat for $140,000.[1] Pursuant to the agreement, Carman was to complete the boat by April 1, 2007. The contract provided that DeChello tender an initial $8,000 deposit and four additional payments of $33,000 tied to the purchase of equipment and/or the completion of specific tasks as follows:

- Payment 1: $8,000    deposit
- Payment 2: $33,000   when the hull is started
- Payment 3: $33,000   to purchase and install engine(s) and all underwater hardware
- Payment 4: $33,000   to purchase under deck components and cockpit
- Payment 5: $33,000   when the cabin interior is completed and sea trials begin
- Payment 6: Excess fees calculated based upon change orders, credits, taxes and fees

---

[1] The record in this case reflects and counsel agreed at oral argument that Carman was the sole owner of Carman Boats, Inc. The original two count complaint filed in the adversary proceeding named Ronnie Carman individually as a defendant and alleged fraud and unfair or deceptive trade practices. The complaint requested that judgment in the amount of $107,000 be entered against Carman individually and against Carman Boats, Inc. The complaint further requested that this entire debt be found to be non-dischargeable as arising from false statements and representations. The docket entries of the United States Bankruptcy Court reflect that the Bankruptcy Court dismissed the companion complaint in Adversary No. 08-0632 filed against Carman Boats, Inc. on February 17, 2009 for failure to state a cause of action on which relief could be granted against the corporation. The record below indicates that this adversary proceeding then proceeded against Carman individually.

DeChello paid the deposit on July 24, 2006.  He made the first $33,000 payment on

August 3, 2006, after receiving a call from Robin Tatterson ("Tatterson"), Carman Boats' office

manager, telling him Carman was ready to begin work on the hull.  On October 9, 2006,

DeChello received an email from Tatterson stating that major parts of the boat would soon be

finished:

> Ronnie [Carman] has asked me to let you know that the Hull will be finished
> today.  We will start on your cabin Wednesday.  Your engine will be ordered in
> two weeks, the under deck components and tank will be order[ed at] the
> beginning of next week.  We will be ordering the rest of your equipment in bulk
> within the next 1 ½ months.  So now your next payment is due, $33,000.00.
> Please send the check Priority Mail.

DeChello made the second $33,000 payment a week later, on October 16, 2006.  Just eight days

later, on October 24, 2006, Tatterson emailed DeChello requesting the third $33,000 payment

and stated: "Your hull will be pulled from the mold the week of the 6th of November … Ronnie

[Carman] will be ordering your engine the week of the 6th also, w[h]e[n] he returns.  Another

payment is due."  DeChello immediately replied via email:

> I was asked to make the second $33,000.00 payment which I wired to you on
> 10/16 so the engine could be ordered and now you are telling me the engine is not
> going to be ordered until the week of Nov[ember] 6th.  Why such a time
> difference from when you ask[ed] me to pay and when you order[ed] the engine?
> And if I send you another $33,000 what is that for?

DeChello never received a response.  The record is not clear with respect to whether Carman saw

this email or realized at this point that the engine was not yet ordered.  The record does reflect

that at some point in November or December of 2006, Tatterson told Carman that she had not

ordered the engine for DeChello's boat.[2]  Carman testified that when he asked the reason for the

---

[2]  Counsel for the Appellee-Carman acknowledged at oral argument on November 2, 2009, that
he had erroneously stated in his brief that Carman did not learn of this failure to order the engine
until sometime after January 2007.

3

engine not being ordered, Tatterson stated, "Because we had to pay bills." (Hr'g Tr. at 69-71.) On November 13, 2006, DeChello nonetheless sent the third $33,000 payment.

Sometime in January 2007, DeChello met with Carman at the Carman Boats facility "to see where the money went" and saw the shell of his boat. DeChello asked Carman about specific parts that were missing from the boat, such as the engine, the outdrive and the power train. Carman told him that these parts were bought and paid for but not yet delivered because his facility was too dusty and therefore he did not have a place to store them. Realizing that Carman was far behind on the construction schedule delineated in the contract, DeChello did not send the fourth $33,000 payment.

In early March 2007, DeChello returned to the Carman Boats facility and observed that the boat still lacked an engine, floors and windows. On March 15, 2007, DeChello faxed a letter to Carman stating that he would make the final $33,000 payment "when the cabin interior is complete and sea trials begin," and expected delivery of the boat on April 1, 2007, per the contract. DeChello did not receive a response to this letter.

On March 30, 2007, DeChello went to the Carman Boats facility to take delivery, but saw that the boat was still a shell.[3] Carman was not at the facility at that time, but confirmed in a telephone conversation that the boat was not ready. DeChello responded that he no longer wanted the boat but instead wanted his money refunded.

On October 4, 2007, DeChello brought a claim against Carman and Carman Boats, Inc., in the Circuit Court of Maryland for Somerset County alleging breach of contract and fraud. On May 22, 2008, Carman individually, and Carman Boats, Inc., filed petitions pursuant to Chapter 7 of the Bankruptcy Code. On August 15, 2008, DeChello filed the underlying adversary

---

[3] DeChello tried to take possession of the boat two days early because the contracted delivery date, April 1, 2007, fell on a Sunday.

complaint asserting that the debt was induced by fraud and unfair or deceptive trade practices and was thus non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

On June 4, 2009, a hearing was convened in Bankruptcy Court before Judge Keir. At the hearing, DeChello sought judicial notice of facts established in an unrelated but comparable proceeding against Carman, *McCauley v. Carman*, AP-08-00737, which had also come before Judge Keir. In that case, Carman had similarly contracted to manufacture a boat that he never completed. Plaintiff Steven McCauley ("McCauley") filed an adversary proceeding against Carman, alleging that the debt he was owed was non-dischargeable because Carman acted with false pretenses, made false representations and perpetrated fraud. McCauley subsequently propounded requests for admissions, to which Carman did not timely respond. As a result, the facts stated in McCauley's request for admissions were deemed admitted under Fed. R. Civ. P. 36(b). McCauley then submitted a motion for summary judgment, which Judge Keir granted, finding that the $100,000 debt Carman owed McCauley was non-dischargeable. At the *DeChello* hearing, Judge Keir refused to take judicial notice of the substance of the admissions made in *McCauley*. Judge Keir explained: "I'm totally unaware of any legal basis for accepting those facts [in *McCauley*] as deemed proven in this adversary proceeding simply as an outcome of the result of the failure to deny them timely in the other adversary proceeding." (Hr'g Tr. at 11.)

At the *DeChello* hearing, DeChello, DeChello's father and Carman were called as witnesses. At the conclusion of the hearing, Judge Keir ruled against DeChello, finding there was insufficient evidence that:

- when Carman signed the contract in July 2006 he knew he would be unable to or did not intend to build the boat.
- Tatterson's August 2006 statement that they were ready to start on the hull was false or intended to be false.

5

- Carman's January 2007 statement that he would purchase engines and install underwater hardware was made falsely and with the purpose to deceive.

Accordingly, Judge Keir issued an order from the bench granting judgment for Carman, finding that his debt to DeChello was dischargeable. On July 7, 2009, DeChello gave notice of his appeal.

## STANDARD OF REVIEW

This appeal is brought pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure. On appeal from the Bankruptcy Court, this Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*. *In re Merry-Go-Round Enterprises, Inc.*, 400 F.3d 219, 224 (4th Cir. 2005); *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). An abuse of discretion standard applies in the review of the Bankruptcy Court's ultimate application of law to fact. "An abuse of discretion exists where the [lower court's] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 470 (3d Cir. 1998) (quoting *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1476 (3d Cir. 1996)) (internal quotation omitted). The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. *See* Fed. R. Bankr. P. 8013. *See also In re White,* 128 Fed. Appx. 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson*, 2006 U.S. Dist. LEXIS 87622, at *6 (D. Md. Dec. 4, 2006).

## ANALYSIS

On appeal, DeChello argues that the Bankruptcy Court abused its discretion by refusing

to consider: 1) the substance of the admissions rendered in *McCauley v. Carman*, since the

admissions would have demonstrated Carman's intent to commit fraud in this case, and 2) the

evidence indicating that the fraud at issue was one of omission.

### I.   *McCauley* Admissions

DeChello first contends that the Bankruptcy Court erred in refusing to take judicial notice

of certain admissions in *McCauley*, and in doing so improperly distinguished between

affirmative admissions and admissions made due to a failure to timely respond.  Rule 36(a)(3) of

the Federal Rules of Civil Procedure provides that a fact stated in a request for admission is

deemed admitted unless the party who is served answers or objects within 30 days.  However,

Rule 36(b) specifically states that "an admission under this rule is not an admission for any other

purpose and *cannot* be used against the party *in any other* proceeding" (emphasis added).

DeChello has not introduced any case law showing that Rule 36(a)(3) admissions made in one

case may be judicially noticed in a different case.  Instead, the opinions DeChello cites

demonstrate that facts stated in unanswered requests for admission are binding on a debtor in his

or her respective bankruptcy proceedings.  *See, e.g., In re Brummitt*, 323 B.R. 522 (Bankr. M.D.

Fla. 2005).  This Court does not interpret these cases to mean such facts are admitted against a

debtor in all unrelated cases.  Since there is no case law that would bring into question the plain

language of Rule 36(b) stating that admissions made through a failure to respond "cannot be

used against the party in *any other* proceeding" (emphasis added), Judge Keir did not abuse his

discretion in refusing to grant judicial notice in this case of the statements Carman admitted due

to a failure to timely respond in the *McCauley* case.

It should be noted that Judge Keir did not ignore *McCauley*, but instead gave that case appropriate consideration. Judge Keir took judicial notice at the hearing of "the events that the docket in [the *McCauley*] adversary proceeding reflect," including that there was an order granting summary judgment for the plaintiff, that there were requests for admissions of fact to which there was no response and were therefore deemed admitted, and that the facts deemed admitted were a material part of the basis for the entry of summary judgment. (Hr'g Tr. at 11.) Judge Keir also allowed DeChello to introduce Carman's prior acts in similar transactions to show his intent and pattern of misconduct. At the hearing, DeChello was permitted to question Carman regarding money he received for boat construction projects from other parties, including McCauley, during the time period encompassed in DeChello's contract and whether or not those projects were ever completed. (Hr'g Tr. at 57-61.) Thus, although Judge Keir did not take judicial notice of the admissions made through silence in *McCauley*, he was well aware of the ruling against Carman in that case, as well as Carman's history of accepting money yet failing to complete construction of other boats. Accordingly, DeChello's argument that the Bankruptcy Court erred in this respect is without merit.

## II.   Fraud by Omission

DeChello also contends that there is sufficient proof Carman committed fraud by omission to find his debt non-dischargeable. DeChello concedes that the Bankruptcy Court appropriately analyzed the evidence with respect to whether Carman made affirmative misrepresentations under 11 U.S.C. § 523(a)(2)(A), which excludes from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." However, DeChello argues that Judge Keir failed to consider the holding of *In re Lindsley*, 388 B.R. 661 (Bankr. D.

Md. 2008), that silence or the concealment of a material fact can also be the basis of a

misrepresentation.  In that case, Judge Gordon of the Bankruptcy Court for the District of

Maryland held:

> [a] misrepresentation can be any words or conduct which produce a false or
> misleading impression of fact in the mind of another… [a]n omission may
> constitute a misrepresentation where the circumstances are such that a failure to
> speak or act creates a false impression.

*Id.* at 668-669.  Since Judge Keir did not make any reference at the hearing to this aspect of the

*In re Lindsley* decision, it is unclear whether Judge Keir considered evidence of fraud by

omission.  Thus, this Court must determine whether the Bankruptcy Court ruling rests upon a

clearly erroneous finding of fact resulting in an abuse of discretion.  Specifically, the factual

question before the Bankruptcy Court was whether there was any evidence indicating that

Carman received any payments from DeChello when he knew that he could not complete

construction of the boat.  More specifically, the factual issue before the Bankruptcy Court was

whether Carman accepted any installment payments from DeChello with the knowledge that said

payments were being utilized for other purposes and not for the construction of the boat.  Since

fraud by omission can occur at any point in time before a breach of contract, each of DeChello's

payments must be considered individually.

    In reviewing the Bankruptcy Court's finding of fact for clear error, this Court initially

notes that there is nothing in the record indicating that Carman realized he would not be able to

fulfill his contractual obligations when he accepted DeChello's $8,000 deposit on July 24, 2006.

Furthermore, there is nothing in the record indicating any deception when the first $33,000

payment was made on August 3, 2006, to start completion of the hull.  These factual findings

were not clearly erroneous and were not an abuse of discretion.

With respect to the second payment of $33,000 DeChello made on October 16, 2006, the record of this case is not quite as clear.  On October 9, 2006, Tatterson sent an email to DeChello stating that the hull would be finished that day and specifically promising that the "engine will be ordered in two weeks, the under deck components and tank will be order[ed at] the beginning of next week."  DeChello wired this second $33,000 payment to Carman Boats just over a week later.  While there is no direct evidence in the record that Carman did not plan to complete the hull or order the engine, the evidence is clear that neither was ultimately done.  It is undisputed in the record that, in fact, the engine was not ordered.  It is further undisputed in the record that Tatterson, as the agent of Carman, ultimately acknowledged not ordering the engine.  However, the factual record of this case is unclear as to the chronology of events at this point.

Furthermore, the record is incomplete with respect to the third $33,000 payment DeChello made on November 13, 2006.  The record does reflect that on October 24, 2006, DeChello received an email from Tatterson indicating that the engine had not yet been ordered. Although DeChello immediately responded with concern over why the engine had not been ordered and received no reply, he sent the third $33,000 payment.

With respect to the $33,000 payment made by DeChello on October 16, 2006, and the $33,000 payment made on November 13, 2006, the record reflects that Tatterson, acting as the agent of Carman, did not purchase the engine, underwater hardware, and underdeck components required by the contract.  The record is unclear as to whether she could ever reasonably have expected to do so in light of the collapse of the business.  The record is unclear as to the interaction of Carman and Tatterson during the period that these two payments were made.  The record does reflect that at some point in November or December of 2006, Tatterson told Carman that she had not ordered the engine for DeChello's boat.  Carman testified that when he asked

Tatterson why the engine had not been ordered, she responded: "Because we had to pay bills." (Hr'g Tr. at 69-71.)

The record is unclear in this case with respect to the actions of Tatterson acting as Carman's agent during this time period. Furthermore, the record is unclear as to the timing of Carman's actual knowledge that these two payments by DeChello were not being used to purchase equipment for the boat, but instead to pay other bills. The failure of either Carman or his agent Tatterson to relay accurate information to DeChello may constitute fraud by omission and entitle DeChello to recovery of these last two payments as non-dischargeable debts pursuant to 11 U.S.C. §523(a)(2)(A). The record in this case is ambiguous as to whether Carman or his agent Tatterson committed fraud by omission with respect to the payments of October 16, 2006 and November 13, 2006. Based upon a review of the record in this case, this Court concludes that the record is insufficient with respect to the necessary findings of fact as to these two payments.

The Bankruptcy Court's opinion in *In Re Lindsley*, 388 B.R. 661, 669 (Bankr. D. Md. 2008), clearly noted that "[a]n omission may constitute a misrepresentation where the circumstances are such that a failure to speak or act creates a false impression." The record in this case does not reflect findings of fact with respect to when Carman knew or should have known that the October and November payments were not being utilized as represented to DeChello. Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, remand for additional fact finding is appropriate for additional findings upon the issues identified herein; *see, e.g., In re Alam*, 359 B.R. 142 (B.A.P. 6th Cir. 2008). Accordingly, this Court remands this case to the Bankruptcy Court for further proceedings and findings of fact as to these two payments. Specifically, the Bankruptcy Court's decision is REVERSED and REMANDED to

make further findings from the record as to whether Carman and or his agent Tatterson

committed fraud by omission when the October 16, 2006 and November 13, 2006 payments of

$33,000 were accepted from DeChello.

     A separate Order follows.

Dated: ~~November 18, 2009~~
     DECEMBER 9, 2009

/s/ _Rich. D. Bennett_
Richard D. Bennett
United States District Judge

12